[No. 25968.  *En Banc.*  July 13, 1936.]

W. W. JUDY *et al., Respondent,* v. GUARANTY TRUST COMPANY, *Appellant.*[1]

[1]Reported in 59 P. (2d) 745.

638

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for appellant.

*D. V. Morthland, Floyd Foster,* and *Harry L. Olson,* for respondents.

BLAKE, J.—William Lampe and Nellie Lampe were husband and wife. The former died testate in 1927, naming the latter executrix of his estate under a nonintervention will. Nellie Lampe died testate in 1928, naming Guaranty Trust Company trustee and executor of her estate under a nonintervention will. Among the assets of the estates was a forty-acre orchard in Yakima county. Guaranty Trust Company qualified as executor under the will of Nellie Lampe. It was also appointed administrator with the will annexed of the estate of William Lampe. Orders of solvency having been entered, the trust company proceeded to administer and manage the estates without the intervention of the court.

February 24, 1932, the trust company, as executor and administrator, entered into a lease of the orchard with C. T. Collins. By the terms of the lease, the lessor was to receive one-half of the fruit and produce grown and harvested on the property.

On April 5, 1932, Guaranty Trust Company, as executor and administrator of the Lampe estates, and Collins entered into a marketing agreement with Judy and Johnson, the plaintiffs herein. The trust company and Collins were designated throughout the contract as the *growers.* By the terms of the contract, Judy and Johnson were to have the handling and marketing of the crop. They agreed

" . . . to furnish the *growers* the necessary supplies to grow and harvest said fruit crops, said

supplies to be charged to the *growers* at prices evidenced by sales tickets thereon at the time of purchases.''

They also agreed to make certain cash advances to Collins. In consideration of such advances as might be made, the *growers* pledged and mortgaged the fruit crops to be grown on the property in 1932. The *growers* also agreed to deliver their promissory notes, bearing interest at eight per cent per annum, for the amount of advances made and supplies furnished. The notes given, however, were executed by Collins alone. It does not appear why appellant did not join in executing the notes. The inference we draw from the record is that it did not simply because it was not asked. But the account was carried at all times on respondents' books in the names of Guaranty Trust Company and C. T. Collins. It was further agreed that,

''. . . if default be made in payment of the sums of money hereby secured . . . then and thereupon the entire debt and the sums hereby advanced shall become due and payable . . .''

Judy and Johnson made advances in compliance with the terms of the contract in the amount of $2,861.93. The crop was harvested and marketed, but it failed, by $1,705.69, to bring the amount advanced by Judy and Johnson. They brought this action on the contract to recover that amount from Guaranty Trust Company. The latter appeals from a judgment for the plaintiffs.

The general rule, which appellant apparently concedes, is that an executor or administrator is personally liable on contracts made in connection with the management of the estate, unless he expressly stipulates against personal liability, notwithstanding he may have executed the contract in his representative

capacity. 24 C. J. 63; 11 R. C. L., pp. 135, 167; 2 Woerner, American Law of Administration (3d ed.), § 356; 1 Ross, Probate Law & Practice, § 470; *Maxon v. Jones*, 128 Cal. 77, 60 Pac. 516; *Austin v. Munro*, 47 N. Y. 360; *Willis v. Sharp*, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493; *Multorpor Co. v. Reed*, 122 Ore. 605, 260 Pac. 203, 55 A. L. R. 504; *Griggs v. Nadeau*, 221 Fed. 381. This court recognized and approved the principle in *In re Ennis' Estate*, 96 Wash. 352, 165 Pac. 119.

But appellant says that it was acting as a trustee, rather than as an executor and administrator. Conceding that it was, the same rule is applicable to the contracts of a trustee. See: *Kincaid v. Hensel*, 185 Wash. 503, 55 P. (2d) 1050, and cases therein cited.

So, the real question to be decided is whether the contract contains any stipulation relieving appellant of personal liability. Appellant contends that it does. The clause relied upon is as follows:

"The Guaranty Trust Company as lessor hereby guarantees the repayment of all advances until said fruit crops are set upon the trees and safe from frosts."

We think this falls far short of being an express stipulation against personal liability, such as contemplated by the authorities we have cited. It does, however, render the contract somewhat ambiguous. For that reason the trial court permitted the parties to introduce testimony concerning the negotiations leading up to the execution of the contract, for the purpose of showing what liability appellant in fact assumed under the contract. The sum and substance of that testimony was that the parties assumed that the crop—once past frost danger—would pay out on all advances made by respondents. Nothing was said about personal liability one way or the other. So we

have to revert to the contract itself in order to determine appellant's liability.

While the clause guaranteeing advances made "until said fruit crops are set upon the trees and safe from frosts" adds nothing to the general obligations assumed by appellant under the contract, we do not think it can be read as a stipulation against personal liability—particularly in view of the absence of evidence that the parties so understood it. For us to so read the clause, would be to give it a meaning that was not in contemplation of the parties at the time the contract was executed and which the clause itself does not express. Taking the contract as a whole, we think it clear that appellant undertook to reimburse respondent for all advances made. If appellant merely intended to waive its landlord's lien and guarantee advances made up to the time the crop was "safe from frosts" only, it would have been a simple thing to say. Or, as we have pointed out, it could have stipulated expressly against personal liability. Having failed to do so, it is, under the contract, liable for the amount of the advances made and supplies furnished by respondents.

There is one other matter to be noticed. Respondents filed with appellant, as administrator and executor of the estates of Mr. and Mrs. Lampe, a claim for the balance due. It is contended that the filing of this claim constituted an election of remedies under our holding in *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340. There is no analogy between that case and this. It was there held that a conditional sales vendor who filed a claim against the estate of the vendee waived his right to reclaim the property. Here, conceding that respondents had a right to collect directly from the estates, the filing of the claim was not an election of remedy. It was simply a preliminary

step to the enforcing of liability against one of two joint obligors under the contract.

Judgment affirmed.

MAIN, MITCHELL, GERAGHTY, and BEALS, JJ., concur.

MILLARD, C. J., HOLCOMB, TOLMAN, and STEINERT, JJ., dissent.